UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YACAIRA REYES,

                    Plaintiff,

         -against-

WESTCHESTER COUNTY HEALTH CARE
CORPORATION d/b/a WESTCHESTER
MEDICAL CENTER, et al.,

                  Defendants.

**MEMORANDUM OPINION
AND ORDER**

19-CV-08916 (PMH)

PHILIP M. HALPERN, United States District Judge:

       Plaintiff Yacaira Reyes ("Plaintiff") brings this employment discrimination action against her employer and supervisors, Westchester County Health Care Corporation d/b/a Westchester Medical Center ("WMC"), Kristina Schrull-Valiente ("Schrull-Valiente"), Lisa Panton ("Panton"), and Tim Murphy ("Murphy," and collectively, "Defendants"). Plaintiff brings nine claims for relief, spread equally across three statutory regimes, against one or more Defendants. Specifically, Plaintiff asserts three claims for relief each—one for discrimination, one for hostile work environment, and one for retaliation—under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), New York City Admin. Code § 8-101 *et seq*.

       Plaintiff filed this action on September 25, 2019. (Doc. 1, "Compl."). Defendants moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on March 6, 2020. (Doc. 28; Doc. 29, "Def. Br."). Plaintiff opposed the motion (Doc. 32, "Opp. Br."), and it was briefed fully with the filing of Defendants' reply on August 3, 2020 (Doc. 31, "Reply").[1]

---

[1] This matter was reassigned to me, after Defendants served the motion to dismiss, on April 6, 2020.

For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

Plaintiff, a female "of Dominican Republic descent," had been a respiratory therapist for over a decade before joining the staff at WMC as one in 2011. (Compl. ¶¶ 9-10, 16-17). During her tenure, she performed the duties associated with "her job diligently and adequately," and was "never" subjected to disciplinary proceedings. (*Id.* ¶ 18). The allegations underpinning this action and its dual theories of pregnancy and national origin discrimination are outlined below.

I.   Incident Occurring in 2016

On July 19, 2016, toward the end of an overnight shift that Plaintiff had worked nonstop, she was "rushed to the hospital with severe inflammation of her stomach and was diagnosed with diverticulitis. The doctors informed Plaintiff that the damage[] was irreversible and . . . caused by stress and going long periods of time without food." (*Id.* ¶ 20).

II.   Incidents Occurring in 2017

On March 1, 2017, Plaintiff suffered a miscarriage; she maintains that the loss was caused by "Defendants' continuing and pervasive abuse, discrimination, and hostile work environment." (*Id.* ¶¶ 72-73). On August 28, 2017, Plaintiff informed one of her supervisors, Murphy, that she was pregnant. (*Id.* ¶ 21). Approximately one week later, on September 7, 2017—notwithstanding that Plaintiff had spent her entire WMC career working the nightshift—Plaintiff learned that she had been reassigned to the dayshift. (*Id.* ¶ 23). Plaintiff complained to an unspecified supervisor that, according her physician, sudden changes to Plaintiff's schedule could be "damaging to herself and her pregnancy," due to the fact that "her pregnancy was considered high risk." (*Id.* ¶¶ 24, 26). Indeed, no "other similarly situated therapists" working the nightshift were "switched into the day shift during their pregnancies." (*Id.* ¶ 25). Plaintiff informed her union representative of the shift

change the day that Plaintiff herself became aware of it and, on September 15, 2017, filed a complaint with the National Labor Relations Board ("NLRB"). (*Id*. ¶¶ 27-28).

Roughly two weeks after filing the NLRB proceeding, on September 27, 2017, an unidentified nurse asked Plaintiff to perform "an assessment of a patient." (*Id*. ¶ 31). During that evaluation, Plaintiff observed "that the patient's saturation was low because of a heavy chair that was blocking the machine." (*Id*.). Plaintiff "asked help moving the chair because she was pregnant. No help was provided, and Plaintiff had to move the chair by herself." (*Id*.). A little more than one week later, on October 5, 2017, Plaintiff spoke with an individual named Paoloa Gomez ("Gomez") "regarding several complaints that Plaintiff had made regarding the way she was treated while at work" and was advised that "Defendants" were aware of the unspecified complaints. (*Id*. ¶ 32).

During her shift on October 6, 2017, as "Plaintiff began administering care to one patient" in the pediatric ICU, two other "emergencies started as well." (*Id*. ¶ 33). Plaintiff asked a manager, Crissy Young ("Young"), to call other respiratory therapists for backup; Young, aware that Plaintiff was pregnant, responded by speculating "disdainfully whether or not [Plaintiff] would be able to handle children." (*Id*. ¶¶ 34-36). Sometime that same day, Plaintiff "suggested to a nurse that they fix a patient's position in bed," and that unidentified nurse told her to "shut-up and make the change." (*Id*. ¶ 37). Plaintiff contacted Schrull-Valiente about that interaction, and the latter wondered aloud, "Why you[,] Yacaira? I have been in this place 17 years and no one has told me to shut up." (*Id*.). By the time Schrull-Valiente arrived to view the patient in question, "there was nothing wrong;" Plaintiff asked why Schrull-Valiente waited so long to respond, and the latter "yell[ed] at Plaintiff and ridicule[d] her" explaining that she not "a mind reader" and did not respond faster because Plaintiff had not asked her to do so. (*Id*.).

Later that month, on October 27, 2017, Plaintiff was provided a copy of the work schedule for November 2017 and learned that she had not been granted the days off that she requested. (*Id*. ¶ 38). Plaintiff contacted the employee "in charge of scheduling" and explained that the November schedule "conflicted with her doctor's appointments;" the response from that unidentified employee was that Schrull-Valiente had "made Plaintiff's schedule and 'I think you know why.'" (*Id*.). Plaintiff contacted Schrull-Valiente about the November schedule the following day and the latter assured Plaintiff that "she would do what she could but upon information and belief, made no attempt to resolve Plaintiff's scheduling issues." (*Id*. ¶ 39).

Exactly two weeks later, on November 10, 2017, Plaintiff was working "in the CTAT Lab" and "the CT scan room," areas which Plaintiff maintains are dangerous for pregnant women. (*Id*. ¶ 41). Schrull-Valiente and John Cornell ("Cornell"), another supervisor, advised Plaintiff "that as long as she wore a protective vest, she could" perform her duties in the CTAT Lab and CT scan room. (*Id*. ¶ 42). Plaintiff protested, insisting that an unidentified "attendant" instructed her to leave because she was pregnant; nevertheless, "despite the attendant's concern," Cornell directed Plaintiff to "remain in the room" with her patient. (*Id*. ¶¶ 42-43).

## III. Incidents Occurring in 2018

On January 26, 2018, Plaintiff received a negative performance evaluation from Cornell, which, in turn, "resulted in the denial of a merit-based increase" to which Plaintiff would otherwise have been entitled. (*Id*. ¶ 66). Cornell, however, was the dayshift manager and, at that time, "[u]pon information and belief, Plaintiff was working" the nightshift at the time the evaluation was issued. (*Id*. ¶ 67). Plaintiff maintains that "this negative performance evaluation was solely based upon the arbitration decision of September 19, 2017[2] which had determined that Defendants violated

---

2 As discussed *infra*, the Arbitration Award was issued on September 19, 2018.

the [Collective Bargaining Agreement ("CBA")] by making drastic changes to Plaintiff's schedule." (*Id*. ¶ 68).

From March 9, 2018 through March 12, 2018, Plaintiff was forced to move "heavy tanks" despite the fact that she was pregnant. (*Id*. ¶ 44). These tanks stood approximately five feet tall, weighed approximately one hundred pounds, and had to be moved "over a thick carpet, every two hours for each" ICU patient to whom Plaintiff was assigned. (*Id*. ¶¶ 45-46). Plaintiff complained that her pregnancy prevented her from moving the tanks on her own; her supervisor, Panton, responded, "[B]ecause you're pregnant, you can't do your job?" (*Id*. ¶¶ 47, 49). Plaintiff took ill on March 12, 2018, and, on March 15, 2018, gave birth prematurely. (*Id*. ¶¶ 51, 53).

Although Plaintiff does not allege when she began her maternity leave, she asserts that it ended when she returned to work at WMC on October 2, 2018 and was asked to undergo "re-orientation training." (*Id*. ¶ 54). According to Plaintiff, such training is only required when an employee returns from a leave lasting more than one year; indeed, at least four other women who had taken maternity leave shorter than one year were not required to participate in re-orientation training. (*Id*. ¶¶ 55, 58-59). Despite the fact that Plaintiff had been on "on leave for approximately [six] months," Defendants forced her to attend the "training in order to discriminate [against] and ridicule her" and invite coworkers' speculation that Plaintiff lacked the necessary "skills and abilities." (*Id*. ¶¶ 55, 56-57). Upon her return, "Defendants" mocked Plaintiff's accent and, on October 6, 2018, Murphy told Plaintiff "that he couldn't understand her and that she was difficult to understand because of her accent," something Murphy had not done in the six years they worked together up to that point. (*Id*. ¶¶ 61-62). Toward the end of the month, on October 20, 2018, Plaintiff was "floated" to a different unit when Panton reassigned Plaintiff "at the very last minute" while other therapists had "steady" assignments. (*Id*. ¶¶ 69-71).

The final identifiable incident from 2018 occurred during Plaintiff's lunchbreak on November 18, 2018 when, while conversing in Spanish on her mobile phone, another respiratory therapist interrupted her and "told Plaintiff to take her call outside." (*Id*. ¶ 65). Plaintiff alleges also that, at some point, she complained to "Human Resources" about unspecified "racist comments" Schrull-Valiente made, but that no investigation was performed. (*Id*. ¶¶ 63-64).

IV.    Incidents Occurring in 2019

 Plaintiff identifies three incidents in 2019. First, on July 13, 2019, Plaintiff's "assignment was changed from ED to CTICU," coverage to which Plaintiff "had not been assigned in quite some time." (*Id*. ¶ 74). Second, on August 21, 2019, Schrull-Valiente "scheduled Plaintiff to work every Friday even though Plaintiff generally only worked every other weekend." (*Id*. ¶ 75). As to this incident, Plaintiff asserts that "similarly situated co-workers have every other Friday off or no Fridays at all . . . ." (*Id*. ¶ 76). Finally, on September 9, 2019, while speaking on her mobile phone in Spanish, "Murphy informed Plaintiff that she cannot make personal calls in the lounge or speak Spanish in there," despite the fact that other unspecified individuals were permitted to make personal calls in a variety of languages without consequence. (*Id*. ¶ 77).

V.    Arbitration and Proceedings Before the New York State Division of Human Rights

Against the bevy of these allegations, Plaintiff initiated two separate proceedings. The first began on September 15, 2017 when Plaintiff complained about the decision to change her schedule from nightshifts to dayshifts. (*Id*. ¶¶ 28-29). An arbitration hearing was held on June 19, 2018, and the arbitrator issued the Arbitration Award on September 19, 2018. (*Id*. ¶ 30; Doc. 30-2, Schudroff Decl. Ex. B, "Arb. Award" at 2).[3] Although the arbitrator referenced Plaintiff's testimony about

---

[3] The Court's decision to consider documents outside the four corners of the Complaint is addressed *infra*. References to documents correspond to the pagination generated on ECF.

"pregnancy-based discrimination" and "discrimination based upon . . . national origin/race," the arbitrator determined that the reassignment "was contemplated long before" Plaintiff informed anybody of her pregnancy and that the record did not "support a finding that" comments about Plaintiff's national origin or race were ever made. (Arb. Award at 9-10). The question was "one of pure contract application" and led to the conclusion that WMC violated the CBA by failing to follow certain procedures before transferring Plaintiff to the dayshift. (*Id*. at 10, 12). The arbitrator directed WMC to comply with the terms of the CBA. (*Id*. at 12-13).

Plaintiff initiated a separate proceeding before the New York State Division of Human Rights ("NYSDHR") and the United States Equal Employment Opportunity Commission ("EEOC") by filing an administrative complaint ("NYSDHR Charge") on October 31, 2018. (Compl. ¶ 4; Doc. 30-3, Schudroff Decl. Ex. C, "NYSDHR Compl."). Plaintiff, in that proceeding, complained that WMC violated the Americans with Disabilities Act ("ADA") and the NYSHRL by subjecting her to discrimination because of her "national origin, pregnancy-related condition, [and] race/color," and because she "opposed discrimination/retaliation." (NYSDHR Compl. at 2). Following an investigation, the NYSDHR dismissed the administrative complaint by a written Determination and Order ("NYSDHR D&O") on April 16, 2019. (Compl. ¶ 5; Doc. 30-4, Schudroff Decl. Ex. D, "NYSDHR Det."). In that written determination, the NYSDHR concluded in pertinent part:

> The evidence adduced from the investigation does not support [Plaintiff's] assertion that [WMC] engaged in unlawful discriminatory practices against [Plaintiff] because she is Hispanic, Dominican, and was pregnant. Specifically, there is insufficient evidence of a nexus between [WMC's] conduct and [Plaintiff's] national origin, pregnancy, sex, and race.

(NYSDHR Det. at 2). The EEOC followed suit and, on July 1, 2019, the EEOC issued a Right to Sue Letter advising that it "adopted the findings of the state or local fair employment practices agency that investigated this charge." (Compl. ¶ 6; Doc. 1-1, Compl. Ex. 1, "Right to Sue Ltr.").

## STANDARD OF REVIEW

I.    Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory of constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Energy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When "the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-6547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.    Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

III.    Documents Considered

On a motion under Rule 12(b)(1), "a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113. Indeed, on such a motion, the Court "may consider

affidavits and other materials beyond the pleadings to resolve the jurisdictional issue," along with "matters of which judicial notice may be taken." *Malloy v. Pompeo*, No. 18-CV-4756, 2020 WL 5603793, at *8 (S.D.N.Y. Sept. 18, 2020) (internal quotation marks omitted). Notably, "[c]ourts routinely take judicial notice of filings and determinations in EEOC investigations." *Id.* (internal quotation marks omitted). Similarly, on a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see also Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Still, even if a document is not incorporated by reference into the complaint, the Court may consider a document "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

Without opposition, in addition to the Complaint herein, Defendants filed three extraneous documents to support their motion: (1) a copy of the September 19, 2018 Arbitration Award (Arb. Award); (2) a copy of the NYSDHR Charge (NYSDHR Compl.); and (3) a copy of the NYSDHR D&O (NYSDHR Det.). The Court considers these three documents because: (1) they are integral to, and referred to within, the Complaint; or (2) are public records of which the Court may take judicial notice. (*See* Compl. ¶¶ 4-6, 28-30).

## ANALYSIS

I.   NYSHRL Claims

The Court, as guided by precedent, considers first Defendants' argument as to lack of subject-matter jurisdiction. Defendants insist that Plaintiff's claims for discrimination, hostile work environment, and retaliation against all Defendants under the NYSHRL (Compl. ¶¶ 84-90, 100-103, 113-16) must be dismissed for lack of subject-matter jurisdiction. The predicate for such dismissal is the operation of the election of remedies doctrine. (Def. Br. at 9-12).

The NYSHRL provides, in pertinent part:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . *unless* such person had filed a complaint hereunder or with any local commission on human rights, or with the superintendent pursuant to the provisions of section two hundred ninety-six-a of this chapter, *provided that*, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed . . . .

N.Y. Exec. Law § 297(9) (emphases added). This provision "precludes a plaintiff from pursuing his discrimination claims in a court of law when the same claims were previously brought before a local administrative agency." *DuBois v. Macy's Retail Holdings, Inc.*, 533 F. App'x 40, 41 (2d Cir. 2013); *see also Guardino v. Vill. of Scarsdale Police Dep't*, 815 F. Supp. 2d 643, 646 (S.D.N.Y. Sept. 6, 2011) (noting that when the NYSDHR "has issued a finding of no probable cause . . . plaintiff's claims . . . are barred by the law['s] election of remedies provisions," and that this "bar is jurisdictional" (alterations in original, internal quotation marks omitted)). Preclusion "is not limited to the precise claims brought in the administrative proceeding," and "[i]f substantially the same facts are involved, then the . . . election of remedies will bar any subsequent

court proceedings. The facts need not be perfectly identical, and merely adding some additional facts and/or re-labeling the claim will not prevent the application of the doctrine of election of remedies." *Wiercinski v. Mangia 57, Inc.*, No. 09-CV-4413, 2010 WL 2681168, at *2 (E.D.N.Y. July 2, 2010) (internal quotation marks omitted); *see also Williams v. City of New York*, 916 F. Supp. 2d 517, 521-22 (S.D.N.Y. 2013).

Plaintiff concedes explicitly that "an aggrieved party may either choose to have her claims of discrimination heard in full before an administrative agency, such as the [NYSDHR], or she may alternatively choose to litigate her claims in a court of law," but insists that the law prevents her merely "from *simultaneously seeking relief* in two forums *at the same time . . . .*" (Opp. Br. at 7-8 (emphasis in original)). The case law cited for this theory—the most recent of which is more than two decades old—does not support the argument. *See Sprott v. New York City Hous. Auth.*, No. 94-CV-3818, 1999 WL 1206678, *2-3 (S.D.N.Y. Dec. 16, 1999) (dismissing claims based on statute of limitations grounds but acknowledging that the NYSDHR complaint was dismissed for "administrative convenience"); *Weiler v. Nat'l Multiple Sclerosis Soc'y*, No. 79-CV-5856, 1980 WL 104, at *3 (S.D.N.Y. Feb. 27, 1980) ("An aggrieved person may seek relief either in an appropriate court or by complaint to the [NYSDHR], but not both."); *Jainchill v. New York State Human Rights Appeal Bd.*, 442 N.Y.S.2d 595 (App. Div. 1981) (concluding that the plaintiff's decision to challenge a determination before the Civil Service Commission did not preclude later filing a complaint with the NYSDHR); *Moran v. Simpson*, 362 N.Y.S.2d 555 (Sup. Ct. 1974) (granting summary judgment for defendant because, although defendant's prior complaint to the NYSDHR had been dismissed, plaintiff's decision to sue the defendant was retaliatory and, itself, a violation of the NYSDHR).

Plaintiff elected her remedy and filed an action with the NYSDHR which was, in turn, dismissed on the merits. (Compl. ¶¶ 4-5; NYSDHR Compl.; NYSDHR Det.). Consequently, given the substantial relationship[4] between the allegations in the Complaint and the NYSDHR Charge, the NYSHRL claims are dismissed under Rule 12(b)(1).

## II.   NYCHRL Claims

Turning to issues within the realm of Rule 12(b)(6), the Court concludes that Plaintiff's claims for discrimination, hostile work environment, and retaliation against all Defendants under the NYCHRL (Compl. ¶¶ 91-95, 104-07, 117-20) cannot survive. The *New York City* Human Rights Law applies only "to acts that occur within the boundaries of New York City." *Fried v. LVI Servs., Inc.*, No. 10-CV-9308, 2011 WL 4633985, at *12 (S.D.N.Y. Oct. 4, 2011), *aff'd*, 500 F. App'x 39 (2d Cir. 2012); *see also Vuong v. New York Life Ins. Co.*, 360 F. App'x 218, 221 (2d Cir. 2010) (noting that NYCHRL applies "only to discriminatory conduct that occurs within the limits of New York City"); *Shands v. Lakeland Cent. Sch. Dist.*, No. 15-CV-4260, 2017 WL 1194699, at *9 (S.D.N.Y. Mar. 30, 2017) (explaining that NYCHRL claims require that "[a] [p]laintiff . . . allege that the [d]efendant discriminated against her within the boundaries of New York City" (quoting *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 623 (E.D.N.Y. 2012) (ellipses added)); *Kearse v. ATC Healthcare Servs.*, No. 12-CV-233, 2013 WL 1496951, at *2 (S.D.N.Y. Apr. 8, 2013) (concluding that, were plaintiff a New York City resident, that fact "would be irrelevant to the impact analysis, which confines the protections of the NYCHRL to those who are meant to be protected—those who work in the city" (internal quotation marks omitted)).

---

[4] Notably, Plaintiff does not counter Defendants' argument that any factual differences between the Complaint and the NYSDHR Charge are immaterial to applying the election of remedies doctrine. (*Compare* Def. Br. at 10-12, *with* Opp. Br. at 7-8).

There is no connection between Plaintiff's allegations and New York City; Plaintiff is a Rockland County resident and experienced the alleged discrimination while working at WMC in Westchester County. (Compl. ¶¶ 8, 10-11). Consequently, the discrimination, hostile work environment, and retaliation claims based on the NYCHRL are dismissed.[5]

III.   Title VII Claims

Generally, Title VII's objective is to ensure "that the workplace [is] an environment free of discrimination . . . ." *Ricci v. DeStefano*, 557 U.S. 557, 580 (2009). The Pregnancy Discrimination Act, which Plaintiff references in her Complaint but not in her opposition brief, "makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." *Singh v. Knuckles, Komosinksi & Manfro, LLP*, No. 18-CV-3213, 2020 WL 6712383, at *8 (S.D.N.Y. Nov. 16, 2020) (quoting *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1344-45 (2015)). Plaintiff advances the three remaining claims of discrimination, hostile work environment, and retaliation—based upon her pregnancy/sex and national origin—under this regime and against WMC only. (Compl. ¶¶ 78-83, 96-99, 108-12). WMC offers a variety of specific arguments as to why these Title VII claims for relief must be dismissed. (*See* Def. Br. at 12-25). The Court addresses these arguments *seriatim*.

A.   Administrative Exhaustion

Before Plaintiff can bring Title VII claims against WMC in this forum, she is required to exhaust her administrative remedies before the EEOC; the parties agree on this principle. (*See* Def. Br. at 13; Opp. Br. at 8). However, WMC argues that the Court should not reach the substance of

---

[5] Plaintiff's failure to oppose Defendants' argument on this point concedes tacitly the argument and provides a separate, independent basis to dismiss the NYCHRL claims. *See Ventillo v. Falco*, No. 19-CV-3664, 2020 WL 7496294, at *12 (S.D.N.Y. Dec. 18, 2020) (noting that the plaintiff's failure to respond to the defendant's argument, by itself, warranted dismissal of the claim for relief).

14

the Title VII claims because the NYSDHR Charge referenced only the ADA, thereby preventing Plaintiff from exhausting her Title VII claims for relief. (Def. Br. at 13-14).

"[I]t is well-settled that merely checking a box, or failing to check a box[,] does not necessarily control the scope of" the EEOC Charge. *Jones v. New York City Dep't of Educ.*, 286 F. Supp. 3d 442, 448 (E.D.N.Y. 2018) (quoting *Cooper v. Xerox Corp.*, 994 F. Supp. 429, 436 (W.D.N.Y. 1998)). Rather, the analysis asks whether claims *not* submitted to the EEOC are "reasonably related" to those that *were* alleged. *Lester v. Mount Pleasant Cottage Sch. Union Free Sch. Dist.*, No. 19-CV-5247, 2020 WL 3618969, at *5 (S.D.N.Y. July 2, 2020). Claims "are reasonably related: '1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; 2) where the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge; and 3) where the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'" *Chidume v. Greenburgh-North Castle Union Free Sch. Dist.*, No. 18-CV-1790, 2020 WL 2131771, at *5 (S.D.N.Y. May 4, 2020) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003)).

Here, Plaintiff specified in her NYSDHR Charge that the WMC had violated the ADA and she checked boxes indicating that she was discriminated against because of her "National Origin" and "Sex," with respect to being Hispanic and pregnant, respectively, and "Retaliation." (NYSHDR Compl. at 2, 4). Although Plaintiff did not state explicitly her reliance upon, and the NYSDHR D&O did not reference, Title VII, the NYSDHR Charge speaks to incidents of discrimination based on pregnancy as well as Plaintiff's "Dominican" heritage. (*See* NYSDHR Compl. at 7-10; NYSDHR Det. at 2-3). Upon review, the Court concludes that Plaintiff's Title VII claims are reasonably related to the ADA claims advanced before the NYSDHR and EEOC in that

they would fall within the scope of the resulting administrative investigation. As such, Plaintiff is not prohibited from pursuing her Title VII claims here. *See Rodriguez v. Int'l Leadership Charter Sch.*, No. 08-CV-1012, 2009 WL 860622, at *4 (S.D.N.Y. Mar. 30, 2009) (finding that the plaintiff's "ADA claim is reasonably related to the Title VII charge she filed with the EEOC," despite the fact that the plaintiff left "the box for an ADA claim . . . unchecked").

B. <u>Timeliness</u>

"Where a state, such as New York, authorizes an agency to address charges of employment discrimination, such charges must be filed within 300 days after the alleged unlawful employment practice occurred." *Roache v. Long Is. R.R.*, --- F. Supp. 3d ---, 2020 WL 5594640, at *7 (E.D.N.Y. Sept. 17, 2020) (internal quotation marks omitted); *see also* 42 U.S.C. § 2000e-5(e)(1). "Claims outside this window are time-barred, except when the claims are part of a continuing violation; otherwise time-barred claims may proceed when separate acts 'collectively constitute one unlawful employment practice.'" *Staten v. City of New York*, 726 F. App'x 40, 43 (2d Cir. 2018) (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)). Relying on these parameters, WMC argues that any incidents occurring before January 4, 2018 (*i.e.*, three hundred days before Plaintiff filed the NYSDHR Charge) are time-barred and should not be considered. (Def. Br. at 13-14). Plaintiff, conceding tacitly WMC's calculation, insists that conduct predating January 4, 2018 is actionable under the continuing violation doctrine. (Opp. Br. at 9-10).

"It has been the law of this Circuit that under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 155-56 (2d Cir. 2012) (alterations

16

and internal quotation marks omitted); *see also Cornwell v. Robinson*, 23 F.3d 694, 703-04 (2d Cir. 1994). However, "the continuing violation doctrine does not apply to discrete unlawful acts, even if the discrete acts were undertaken 'pursuant to a general policy that results in other discrete acts occurring within the limitations period.'" *Rowe v. New York State Dep't of Taxation & Fin.*, 786 F. App'x 302, 304 (2d Cir. 2019) (quoting *Chin*, 685 F.3d at 157). In the latter case, "each discrete discriminatory act 'starts a new clock for filing charges alleging that act.'" *Kennedy v. Bernhardt*, No. 18-CV-647, 2020 WL 7399050, at *4 (W.D.N.Y. Dec. 16, 2020) (quoting *Taylor v. City of New York*, 207 F. Supp. 3d 293, 301 (S.D.N.Y. 2016)). Applying this "doctrine is heavily disfavored in the Second Circuit, and courts have been loath to apply it absent a showing of compelling circumstances." *Id.* (internal quotation marks omitted).

Before January 4, 2018, Plaintiff was: (1) reassigned to the dayshift and denied requested leave (Compl. ¶ 23-24, 38-39); (2) forced to move a chair without help and remain in an area she believed dangerous to pregnant women (*id.* ¶¶ 31, 41-43); (3) berated by Schrull-Valiente (*id.* ¶ 37); and (4) questioned by Young as to whether she could handle parenthood (*id.* ¶ 35).[6] These incidents are discrete acts and do not support application of the continuing violation doctrine. *See Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 445 (E.D.N.Y. 2013) (yelling at employee was a discrete act); *Kaur v. New York City Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 330 (S.D.N.Y. 2010) (supervisors' and coworkers' comments that they "don't want foreigners here" and that Indians "sell their daughters," "eat cows," and "never tell the truth" were discrete acts); *Bain v. Highgate Hotels, LP*, No. 08-CV-3263, 2009 WL 10705912, at *7 (E.D.N.Y. July 7, 2009) (concluding that "a series of discrete acts consisting of specific failures to assign [plaintiff]

---

[6] The Court includes neither Plaintiff's 2016 hospitalization nor her 2017 miscarriage, as they are alleged products, not acts, of discrimination. (Compl. ¶¶ 20, 72-73.)

to the early shift . . . a particular denial of a requested vacation date, or an assignment of an onerous task on some occasions" did "not support invocation of the continuing violation doctrine"); *Benjamin v. Brookhaven Sci. Assocs., LLC*, 387 F. Supp. 2d 146, 153 (E.D.N.Y. 2005) (noting that "undesirable work transfers, and denial of preferred job assignments are considered discrete acts").

While the continuing violation doctrine is inapplicable to this case, this conclusion does not prevent the Court from considering pre-January 4, 2018 events in the context of Plaintiff's Title VII hostile work environment claim. Unlike a claim for discrimination or retaliation, a claim for hostile work environment, by its "very nature involves repeated conduct," and, as such, "cannot be said to occur on any particular day." *Richard v. New York City Dep't of Educ.*, No. 16-CV-957, 2017 WL 1232498, at *14 (E.D.N.Y. Mar. 31, 2017) (quoting *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010)). This means that "so long as an act contributing to that hostile environment takes place within the statutory time period," otherwise time-barred incidents may be considered. *Id*. Similarly, while not actionable, the Court is permitted to consider allegations beyond the statute of limitations for the purpose of providing context and background. *See generally Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3-4 (S.D.N.Y. Jan. 8, 2021).

Consequently, as the incidents predating January 4, 2018 are discrete acts, they are not actionable independently and are time-barred with respect to Plaintiff's discrimination and retaliation claims for relief.[7]

---

[7] Defendants argued in a footnote that incidents occurring after the Right to Sue Letter was issued were also beyond this Court's jurisdiction (Def. Br. at 14, n.6) and noted in reply that Plaintiff did not dispute the argument (Reply at 3). The Court will not address the argument because "it is well-established that the Court need not consider arguments made only in footnotes." *Youngs v. Comm'r of Soc. Sec.*, No. 18-CV-119, 2019 WL 3083045, at *5 n.6 (W.D.N.Y. July 15, 2019).

C.  Discrimination Claim

"To establish a *prima facie* case of discrimination under Title VII . . . a plaintiff must allege that '(1) she is a member of a protected class; (2) she is qualified for the position held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.'" *Malloy*, 2020 WL 5603793, at *15 (quoting *Rosen v. New York City Dep't of Educ.*, No. 18-CV-6670, 2019 WL 4039958, at *6 (S.D.N.Y. Aug. 27, 2019)). WMC argues that Plaintiff has not pled facts supporting the third or fourth elements of this claim. (Def. Br. at 15-17). The Court agrees.

An adverse employment action exists when "[a] plaintiff . . . endures a material adverse change in the terms and conditions of employment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). To qualify as an adverse employment action, the act must be "more disruptive than a mere inconvenience of an alteration of job responsibilities." *Id*. (quoting *Terry*, 336 F.3d at 138). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id*. at 85 (quoting *Terry*, 336 F.3d at 138). However, "without more, an employer's criticisms or negative evaluations of an employee's performance do not constitute actionable adverse employment action, nor do everyday workplace grievances, disappointments, and setbacks." *Belton v. Borg & Ide Imaging, P.C.*, --- F. Supp. 3d ---, 2021 WL 98392, at *4 (W.D.N.Y. Jan. 12, 2021) (internal citations and quotation marks omitted). Upon review, only one of Plaintiff's actionable allegations qualifies as an adverse employment action.

The negative performance review Plaintiff received in January 2018 prevented her from securing a pay raise to which Plaintiff otherwise would have been entitled (Compl. ¶¶ 66-68); this qualifies an adverse employment action. *Campbell v. New York City Transit Auth.*, 93 F. Supp. 3d 148, 168 (E.D.N.Y. 2015) (explaining that negative performance evaluations "are adverse employment actions only if they affect ultimate employment decisions such as promotion, wages, or termination" (internal quotation marks omitted)). However, beyond that, Plaintiff's post-January 2018 incidents consist of: (1) moving heavy tanks on her own and being asked if the pregnancy prevented her from doing her job (Compl. ¶¶ 44-49); (2) receiving reassignments (*id.* ¶¶ 69-71, 74-75); (3) being directed not to take personal calls or speak Spanish (*id.* ¶¶ 65, 77); (4) a supervisor's comment that her accent made her difficult to understand (*id.* ¶¶ 61-62); and (5) being forced to undergo retraining (*id.* ¶¶ 54-59). None of these other incidents state plausibly an adverse employment action such that Plaintiff experienced a "material adverse change in the terms and conditions of employment." *See, e.g.*, *Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d 158, 176 (E.D.N.Y. 2017); *Brown v. CSX Transp. Inc.*, 155 F. Supp. 3d 265, 271 (W.D.N.Y. 2016); *Collazo v. Cty. of Suffolk*, 163 F. Supp. 3d 27, 43 (E.D.N.Y. 2016); *Levitant v. City of New York Human Res. Admin.*, 914 F. Supp. 2d 281, 303 (E.D.N.Y. 2012); *Guzman v. City of New York*, No. 06-CV-5832, 2010 WL 4174622, at *13, 15 (E.D.N.Y. Sept. 30, 2010); *Figueroa v. New York City Health & Hosps. Corp.*, No. 03-CV-9589, 2007 WL 2274253, at *4 (S.D.N.Y. Aug. 7, 2007); *Reckard v. Cty. of Westchester*, 351 F. Supp. 2d 157, 161 (S.D.N.Y. 2004).

With respect to the fourth element of a Title VII discrimination claim, "[a] plaintiff can meet that burden through direct evidence of intent to discriminate or by indirectly showing circumstances giving rise to an inference of discrimination." *Jeanty v. Newburgh Beacon Bus Corp.*, No. 17-CV-9175, 2018 WL 6047832, at *6 (S.D.N.Y. Nov. 19, 2018) (quoting *Vega*, 801

F.3d at 87). Although "[n]o one particular type of proof is required to [allege]" that an adverse employment action "occurred under circumstances giving rise to an inference of discrimination," *Boza-Meade v. Rochester Hous. Auth.*, 170 F. Supp. 3d 535, 553-54 (W.D.N.Y. 2016) (quoting *Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625, 2013 WL 3968748, at *6 (E.D.N.Y. July 30, 2013) (first alteration added)), "[n]aked assertions of . . . discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristics are too conclusory to withstand a motion to dismiss." *Ellis v. New York City Dep't of Educ.*, No. 19-CV-1441, 2020 WL 1166056, at *3 (S.D.N.Y. Mar. 11, 2020) (quoting *Sanders-Peay v. New York City Dep't of Educ.*, No. 14-CV-4534, 2014 WL 6473507, at *8 (E.D.N.Y. Nov. 18, 2014) (alterations in original)). Here, Plaintiff pled affirmatively that the lone actionable adverse employment action—the January 2018 performance evaluation—"was solely based upon the arbitration decision . . . which had determined that Defendants violated the CBA by making drastic changes to Plaintiff's schedule." (Compl. ¶ 68; *see also* Opp. Br. at 6). Phrased a different way, Plaintiff attempted to link the negative performance review to the Arbitration Award issued nine months after the performance review, not her membership in a protected class.

As a result of the foregoing, the Title VII discrimination claim is dismissed because Plaintiff pled only one adverse employment action and failed to plead facts linking that decision to her membership in a protected class.

### D. Hostile Work Environment Claim

To state a hostile work environment claim under the Title VII, Plaintiff must allege: "[1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d

Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (alterations in original)); *see also Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (outlining the same elements under the ADA); *Daly v. Westchester Cty. Bd. of Legislators*, No. 19-CV-4642, 2021 WL 229672, at *9 (S.D.N.Y. Jan. 22, 2021) (noting the same elements under the Rehabilitation Act). The offensive conduct must be linked to the "protected characteristic." *Rivera v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 19-CV-11624, 2020 WL 7496282, at *9 (S.D.N.Y. Dec. 21, 2020) (internal quotation marks omitted). While a single incident may suffice, "[a]s a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano*, 294 F.3d at 374 (internal quotation marks omitted). The test requires both that the conduct "create[s] an objectively hostile or abusive work environment, and that the victim . . . subjectively perceive[d] that environment to be abusive." *Id.* (internal quotation marks omitted). WMC argues that this claim must be dismissed because Plaintiff has not pled a pervasively hostile environment. (Def. Br. at 18-21). The Court agrees.

Plaintiff has not described an objectively hostile workplace; rather, at most, she described a collection of vignettes that she found objectionable. Indeed, instead of alleging that her working conditions were altered in some way, Plaintiff pled affirmatively that she "has always done her job diligently and adequately and has never had any disciplinary proceedings brought against her." (Compl. ¶ 18). Looking to the totality of the circumstances, the incidents were episodic and do not suggest a work environment that was so permeated with harassment as to alter the terms of her employment.[8] *See, e.g.*, *Colas v. City of Univ. of New York*, No. 14-CV-4825, 2019 WL 2028701,

---

[8] Defendants argue also that Plaintiff never connected the offensive treatment to pregnancy. (Def. Br. at 19). As the Court concludes that Plaintiff failed to plead an objectively hostile work environment on either theory of discrimination (*i.e.*, national origin or pregnancy), it need not and does not reach this argument.

at *5-6 (E.D.N.Y. May 7, 2019); *Richard*, 2017 WL 1232498, at *14-15; *Sattar v. Johnson*, 129 F. Supp. 3d 123, 142-44 (S.D.N.Y. 2015).

As Plaintiff failed to plead an objectively hostile work environment, this claim is dismissed.

E. Retaliation Claim

The final claim for consideration is one for Title VII retaliation. In order to state this claim, Plaintiff must allege: "1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." *Roache*, 2020 WL 5594640, at *11 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013)). WMC insists that this claim must be dismissed because Plaintiff fails to plead a protected activity, an adverse employment action, or a causal link between them. (Def. Br. at 21-25). The Court agrees.

For purposes of a Title VII retaliation claim, "[a] plaintiff engages in 'protected activity' when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Ramirez v. Michael Cetta Inc.*, No. 19-CV-986, 2020 WL 5819551, at *19 (S.D.N.Y. Sept. 30, 2020) (quoting *Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 405 (W.D.N.Y. 2012)). The question is whether the employer "understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). "Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013).

Plaintiff insists that she engaged in a protected activity when she complained of discrimination on various occasions. (Opp. Br. at 21). Assuming they would be actionable, the bulk of the incidents cited are dispensed with easily: (1) disagreeing with Cornell about the safety of working in the CTAT Lab and CT scan room (Compl. ¶¶ 41-43); (2) asking Young for backup in caring for ICU patients (*id*. ¶¶ 33-36); (3) complaining to Gomez generally about "the way she is treated . . . at work" (*id*. ¶ 32); (4) informing Panton about the risk of Plaintiff moving heaving tanks (*id*. ¶¶ 44-49); and (5) notifying Schrull-Valiente about being told to "shut up" and scheduling issues (*id*. ¶¶ 37, 39). None of these interactions would have reasonably led WMC to understand that Plaintiff was opposing discrimination prohibited by Title VII and, as such, do not state a protected activity. *See Sharpe v. MCI Commc'ns Servs., Inc.*, 684 F. Supp. 2d 394, 406 (S.D.N.Y. 2010) (granting summary judgment on Title VII retaliation claim and noting that "[t]he onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining of unfair treatment generally." (internal quotation marks omitted)).

There are two other incidents Plaintiff says constitute protected activity. First, Plaintiff cites her complaint to the NLRB and the "arbitration proceeding." (Opp. Br. at 21). Upon review of the Complaint, it does not appear that the activity would have put WMC on notice that Plaintiff was making a protected complaint. (*See* Compl. ¶¶ 23-30). Plaintiff complained to her supervisor that a shift change would "be damaging to herself and her pregnancy," but did not claim the shift change was the product of discrimination. (*See id*.). Indeed, in her recitation of the claim for relief, Plaintiff insists that WMC "retaliated against [her] for her complaint to the NLRB and subsequent proceeding in which it was revealed that Defendants violated the CBA." (*Id*. ¶ 110). Likewise, although the Arbitration Award references allegations of discriminatory conduct (*see* Arb. Award

at 9-10), it is not clear as to when these allegations were pressed or how they developed. Granting Plaintiff every inference on this record, she has not pled plausibly that WMC could have reasonably understood the NLRB proceeding to protest discrimination. *See, e.g.*, *Martel v. New England Home Care, Inc.*, No. 09-CV-1412, 2014 WL 3687738, at *14 (D. Conn. July 22, 2014) (noting that "vague and ambiguous" complaints that "do not sufficiently articulate the nature of harassment do not constitute a protected activity" (internal quotation marks omitted)); *Sharpe*, 684 F. Supp. 2d at 406 (S.D.N.Y. 2010).

As for the only other claimed protected activity—complaining, at some point, to Human Resources that Schrull-Valiente had made unspecified "racist comments" (Compl. ¶ 64)—Plaintiff does not tie that activity to the only adverse employment action[9] pled (*i.e.*, the negative performance review). (Compl. ¶¶ 66-68). Even if the Court stretched the allegations to connect these two facts, Plaintiff's causation argument relies solely on temporal proximity. (Opp. Br. at 24-25). Having failed to specify when Plaintiff complained to Human Resources, the Court cannot infer a connection based on temporal proximity. *Ahmad v. White Plains City Sch. Dist.*, No. 18-CV-3416, 2020 WL 5720753, at *8 (S.D.N.Y. Sept. 24, 2020).

In light of the foregoing, the Court concludes that Plaintiff pled only one protected activity and, with respect to that protected activity, failed to establish causation between it and any adverse employment action. As such, the Title VII retaliation claim for relief is dismissed.

---

[9] The definition of "adverse employment action" differs between Title VII discrimination and retaliation claims. As to the latter, the element considers whether "it is harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Ramirez*, 2020 WL 5819551, at *20 (internal quotation marks omitted, alterations in original). Despite the more relaxed standard on this claim, the Court's conclusions regarding adverse employment actions under Title VII discrimination apply to the retaliation claim as well.

## CONCLUSION

Based upon the foregoing, Defendants' motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 28 and to close this case.

**SO ORDERED:**

Dated:   New York, New York
         January 29, 2021

_____
PHILIP M. HALPERN
United States District Judge